ST. FRANCIS COUNTY; St. Francis Election
Commission by and through Its Members,
Elizabeth Smith (Chairperson),
Betty Proctor, Kevin Jones, Donnie Mooney,
Sandy Meurrier, and All Defendants Sued in
Their Individual and Official Capacity *v.*
Robert Lewis JOSHAWAY, Hudie Hardaway,
Earnestine Jackson, Belinda G. Joshaway,
Henrietta D. Ford-Scofield, Linda Lockhart,
Vanessa D. Alexander, Tilda Holmon,
Eula M. Simmons, Mose Simmons, Cathy Tucker,
Willie Hill, Emma Hardaway,
Jessica Hardaway, Jessica Doolittle,
Lashawn Lockhart, Dessie Mae Bobo,
Koleen C. Reynolds

01-244                          58 S.W.3d 361

Supreme Court of Arkansas
Opinion delivered November 8, 2001

*Fletcher Long, Jr.*, for appellants.

*Sam Whitfield, Jr.*, for appellees.

ANNABELLE CLINTON IMBER, Justice. The appellants, St. Francis County, St. Francis County Election Commission, by and through its members, Elizabeth Smith (chairperson), Betty Proctor, Kevin Jones, Donnie Mooney; and Sandy Meurrier, all having been sued in their individual and official capacity, appeal an award of attorney's fees entered by the St. Francis County Circuit Court in favor of the appellees, Robert Lewis Joshaway, Hudie Hardaway, Earnestine Jackson, Belinda G. Joshaway, Henrietta D. Ford-Scofield, Linda Lockhart, Vanessa D. Alexander, Tilda Holman, Eula M. Simmons, Mose Simmons, Cathy Tucker, Willie Hill, Emma Hardaway, Jessica Hardaway, Jessica Doolittle, Lashawn Lockhart, Dessie Mae Bobo, and Koleen C. Reynolds. The sole issue on appeal is whether the trial court erred in awarding attorney's fees to the appellees in an action that was essentially an election contest, and that culminated in a final judgment declaring appellee Hudie Hardaway to be the winner of the Hughes school-board election held on September 15, 1998. We hold that the trial court erred in awarding attorney's fees, and we reverse the trial court's ruling and dismiss the appellees' motion for attorney's fees.

This case arises out of a dispute over the results of a school-board election held in the Hughes School District on September 15, 1998. Donnie Mooney, one of the appellants in this action, was certified by the St. Francis County Election Commission as the winner of position 7, an at-large position on the Hughes school board. Hudie Hardaway, the other candidate for the at-large position, along with Robert Lewis Joshaway and several other electors are the appellees in this action.[1] Their complaint in this case alleged numerous voting irregularities in the school-board election and specifically challenged the Election Commission's failure to count 91 ballots.[2] The uncounted ballots were delivered to the election commissioners in a supply box. Elizabeth Smith, Chairperson of the Election Commission, testified at trial that she did not know why the 91 ballots were in the supply box and not in the ballot box. The Office of the Secretary of State advised the Election Commission that the ballots delivered in the supply box were not to be counted because they had not been locked up in the ballot box. According to the Secretary of State, it was the voter's responsibility to put his

---

[1] There were two other candidates for the zone 3 school board position, and Earnestine Jackson, one of the appellees in this action, was certified by the Election Commission as the winner of the zone 3 position.

[2] The complaint sought redress for the wrongs alleged therein, "in so much as they are violative of Federal Constitution, Arkansas Constitution, Arkansas statutory provisions, and since all stem from a racial base are violate [sic] of Arkansas Civil Rights Act."

or her individual ballot into the ballot box. Ultimately, the Election Commission made no determination as to why the 91 ballots remained outside the ballot box.

Following a bench trial on March 23, 1999, and a hearing on July 30, 1999, the trial court entered its order on September 17, 1999, and held that the ballots set aside by the Election Commission should be counted. In fact, the court counted the ballots, save three that were spoiled, and found that Hudie Hardaway prevailed in the September 15, 1998 school-board election by a vote of 239 to 238. The Election Commission was ordered "to immediately certify the name of Hudie Hardaway as the duly elected City of Hughes School Board member for [position] seven (7) to the Secretary of State." On November 16, 2000, the trial court awarded attorney's fees and expenses in the amount of $18,798.63 to the appellees' attorney Sam Whitfield, and attorney's fees in the sum of $2,000.00 to attorney Jimmie Wilson.[3]

■ The long-standing rule in Arkansas is that attorney's fees cannot be awarded unless specifically provided for by statute or rule. *Furman v. Second Injury Fund*, 336 Ark. 10, 983 S.W.2d 923 (1999); *Arkansas Oklahoma Gas Corp. v. Waelder Oil & Gas, Inc.*, 332 Ark. 548, 966 S.W.2d 259 (1998); *State ex rel. Bryant v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). Arkansas follows the American Rule that attorney's fees are not chargeable as costs in litigation unless permitted by statute.[4] *Lakeview School District No. 25 of Phillips County v. Huckabee*, 340 Ark. 481, 10 S.W.3d 892 (2000); *Love v. Smackover School Dist.*, 329 Ark. 4, 946 S.W.2d 676 (1997).

■ For their sole point on appeal, the appellants claim that the appellees are not entitled to attorney's fees because they prevailed only on their arguments regarding violations of the Arkansas Election Code. *See* Ark. Code Ann. §§ 7-1-101, *et seq.* (Repl. 2000; Supp. 2001). The statutes governing elections in Arkansas do not provide for the award of attorney's fees to the prevailing party in an election matter. The appellees, on the other hand, argue that they are entitled to attorney's fees under the United States and Arkansas Constitutions, the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105 (Supp. 2001), and the federal Voting Rights Act, 42 U.S.C. § 1971, *et seq.* (West 2001).

---

[3] The appellants' notice of appeal from the trial court's order awarding attorney's fees was timely filed on November 28, 2000.

[4] Arkansas has recognized exceptions to this rule, none of which are applicable here.

■ ■ In reviewing an award of attorney's fees, we first consider what statutory authority is relied upon by the trial court in its order awarding fees, as well as any statutes cited by the prevailing party in its motion for attorney's fees. *See* Ark. R. Civ. P 54(e)(2001). In the instant case, however, the trial court's order awarding fees does not state 'a statutory basis for the award. Moreover, the appellees' motion for attorney's fees fails to cite any statute or rule expressly providing for an award of attorney's fees. Thus, in order to determine whether there is a statutory basis for an attorney's fee award in this case, the nature of the action upon which the trial court awarded relief must be ascertained by referring to the trial court's original judgment.

We first note that the judgment is entitled "Final Judgment on Election Contest," and the trial court declares at the outset that "[t]his is essentially an election contest filed by [the appellees] on October 5, 1998." The judgment begins with a factual discussion of some of the problems that occurred on the day of the school-board election. The trial court cites evidence that the polling place in the City of Hughes ran out of ballots on the afternoon of the election, and goes on to say that "[t]his need for additional ballots is what triggered a large part of this controversy." Specifically, Elizabeth Smith, Chairperson of the St. Francis County Election Commission, delivered additional ballots to Hughes before the ballots ran out. Later, she received a call that Hughes was out of ballots again, and, at that point, she directed poll workers to make copies of ballots. Approximately 100 copies of ballots were made and handed out, and some voters were told that the copied ballots had to be kept separate from originals. The trial court also cited evidence of complaints regarding people generally milling around the polling places and complaints that people whose names were not on the voter lists were attempting to vote. Furthermore, there was evidence of a dispute regarding electors being required to furnish a physical address before being allowed to vote.[5] Sandy Meurrier, an election worker, testified that "the disorderly conduct was not limited by race. That there were blacks and whites causing problems."

The final problem that arose during the election involved 91 ballots that were returned to the Election Commission in a supply box. Of the uncounted ballots, the trial court's order determined that 15 were copies, 73 were originals, and 3 were spoiled. As

---

[5] According to Ms. Smith, a person needed a physical address to prove he or she was an eligible voter within the correct zone.

previously mentioned, the trial court counted the 88 unspoiled ballots, added the respective votes to the vote totals previously certified by the Election Commission, and found that "Hudie Hardaway should be certified as the winner of the zone seven (7), Hughes, Arkansas school board election."

Following this summary of the evidence, the trial court's judgment begins a recitation of Arkansas election laws regarding the duties of election officers, policing requirements at election precincts, election-contest procedures, election illegalities and procedures for convening a grand jury investigation, and the number of printed ballots to be provided by election commissioners to each election precinct. *See* Ark. Code Ann. §§ 7-5-210, -801, -807; 7-7-303; 7-9-102 (Repl. 2000). The trial court also refers to several decisions by this court in election cases. *See e.g., Binns v, Heck*, 322 Ark. 277, 908 S.W.2d 328 (1995); *Ashcraft v. Cox*, 310 Ark. 703, 839 S.W.2d 219 (1992); *Vandiver v. Washington County*, 274 Ark. 561, 628 S.W.2d 1 (1982); *Orr v. Carpenter*, 222 Ark. 716, 262 S.W.2d 280 (1953); *Dotson v. Ritchie*, 211 Ark. 789, 202 S.W.2d 603 (1947); *Black v. Jones*, 208 Ark. 1011, 188 S.W.2d 626 (1945); *Condren v. Gibbs*, 94 Ark. 478, 127 S.W. 731 (1910); *Powell v. Holman*, 50 Ark. 85, 6 S.W. 505 (1887).

The focus of the trial court's inquiry in this action is ultimately articulated in the judgment by the following statement: "It is the duty of this Court to determine which candidate received the most legal votes." In order to make that determination, the trial court points to our decisions in *Ashcraft v. Cox, supra*, and *Orr v. Carpenter, supra*, where we reiterated that election laws are merely directory after an election, and the courts do not favor disenfranchising a voter because of the misconduct of another person. These election-law principles are the basis of the trial court's decision to tally the uncounted ballots and declare Hudie Hardaway the winner of the election, as reflected in the concluding paragraphs of the judgment:

> There is no evidence before the Court that there was fraud involved in the 91 ballots at issue and the evidence shows that these are qualified voters. The Court will not invalidate votes based upon the failure of the election workers to insure that the 88 votes were properly challenged or placed in the ballot boxes and returned to the Courthouse. The Court finds that any errors were not the fault of the voters. The voters were qualified and eligible, they voted and should not be disenfranchised. The Court has personally examined and counted the 88 ballots. . . .

Therefore, the final election results are as follows:

| | |
|---|---|
| Denise Mooney | 209 |
| | +29 |
| *total* | 238 |
| | |
| Hudie Hardaway | 180 |
| | +58 |
| *total* | 239 |

■ Though the appellees claim entitlement to attorney's fees under the Arkansas Civil Rights Act and the federal Voting Rights Act, the trial court in its judgment certifying Mr. Hardaway as the winner of the election makes no finding that either Act was violated. In fact, the judgment makes no mention at all of the Arkansas Civil Rights Act. The judgment does contain quotations from the federal Voting Rights Act, 42 U.S.C. § 1971(a)(1) and (a)(2)(B). However, the court never finds any violations of that Act. Similarly, the court does not find any violations of the United States or Arkansas Constitutions. Because the trial court's judgment awarded no relief pursuant to the Arkansas Civil Rights Act or the federal Voting Rights Act, the appellees have not prevailed under those Acts and are therefore not entitled to attorney's fees thereunder.

■ Viewing the trial court's judgment as a whole, it is clear that the appellees' lawsuit was essentially an election contest. The primary purpose of the action, as reflected in the relief awarded by the trial court, was to have Mr. Hardaway declared the winner of the school-board election.[6] The court's judgment focuses primarily on alleged errors in election procedure that resulted in ballots being kept outside the ballot box without being properly challenged under election law. Because Arkansas's election laws provide the basis for the trial court's judgment in this election contest, we conclude that attorney's fees are not warranted.

Attorney's fee order reversed; appellees' motion for attorney's fees dismissed.

---

[6] This is also confirmed by the following statement in the appellees' motion for attorney's fees: "As grounds for their motion, [the appellees] demonstrate that they are the prevailing parties in the lawsuit, that they have accomplished the principal purposes of the law suit. . . ."